FLEMING, Administrator of the Wage and Hour Division, United States Department of Labor, v. STONE et al.

No. 1941.

District Court, N. D. Illinois, E. D.

Oct. 6, 1941.

1002

Gerard D. Reilly, Sol., and Irving J. Levy, Asst. Sol., both of Washington, D. C., and Alex Elson, Regional Atty., Sidney A. Jones, Jr., and Lee K. Beznor, Attys., all of Chicago, Ill., for the Wage and Hour Division, United States Department of Labor.

Jacobson, Merrick, Nierman & Silbert, of Chicago, Ill., for defendants.

PHILIP L. SULLIVAN, District Judge (after stating the facts as above).

This case was heard by the court and taken under advisement. Briefs have been filed on behalf of both parties.

The first question before me for determination is whether defendants violated the provisions of Section 7 of the Fair Labor Standards Act of 1938 in not paying their employees for overtime hours at one and one-half times the "regular rate" at which they were employed.

Out of approximately 175 employees, plaintiff complains of a failure to pay overtime to the following:

Ten employees who were receiving fixed weekly salaries of $30 or more for fluctuating hours. Defendants claim that these employees were executives and therefore exempt under the Act as well as under the Administrator's definition of an executive. One of these executives, a statistician, defendants claim in any event is not subject to the Act because he is not engaged in commerce or in the production of goods for commerce.

Seventeen employees who were receiving fixed weekly salaries ranging from $30 to $40 for hours which fluctuated above and below the maximum and who received extra compensation for Sunday work.

Plaintiff contends that some of the above employees claimed by defendants to be executives are not properly classified, on the ground that two of them received only $27.50 per week at the commencement of their status; and that they were, together with three other employees, at times one man departments.

Defendants urge that inasmuch as the agreements made with their employees prior to the passage of the Act, and covering weekly wages as well as overtime, provided for compensation at a much higher rate than the minimum fixed in the Act, that therefore the employees were being paid time and one-half the minimum for overtime, and consequently there was no violation of Section 7.

On the other hand plaintiff's position is that there was no agreement between the parties as to the payment of overtime; that Section 7 of the Act requires defendants to compensate their employees for hours worked in excess of the statutory maximum at rates not less than one and one-half times their regular rates, and that such regular rates are not and cannot be the minimum rates fixed by the Act, unless an employee is actually employed at the minimum, but rather must be arrived at by dividing the amount of wages paid in any one week, regardless of how high that wage is, by the number of hours worked that week.

The relationship of master and servant being a contractual one, I know of no reason why defendants and their employees could not have made such contracts or agreements as it is claimed they did, providing for the compensation which defendants were to pay and their employees were to receive. Indeed, without contract or agreement, either express or implied, the relationship of employer and employee did not and could not exist. Contracts or agreements were entered into between defendants and their employees, wherein it was provided that each employee was to be paid a regular fixed weekly salary for fluctuating hours, which was also to cover any overtime which the employee might be called upon to work in any week. The Administrator disputes this fact by pointing to the evidence of one employee, an engineer, who when asked the question, "Did you understand that the weekly salary included overtime?" replied, "No, I figured I had a flat rate of pay. I figured we were not covered, you know. I never questioned it because I needed the job." There is entire agreement, however, on the fact that while the number of hours actually worked by any of these employees fluctuated each week, their salaries were guaranteed to remain the same. In Fleming, Adm'r, v. Belo, Corp., 5 Cir., 121 F.2d 207, 215, in commenting on this same situation, Judge Sibley, in his concurring opinion, said: "The contract follows exactly what the Act requires, except for the guaranty of a minimum weekly total. That guaranty is for the protection and benefit of the employee, the needs for whose living are constant whether his weekly work is or not. It enables him to know that he will have at least the guaranteed sum to live on no matter how slack his work may prove. This helps to maintain a decent standard of living which is the main purpose of the Act."

The Fair Labor Standards Act of 1938, in its "Declaration of policy", provides:

"Sec. 2 [§ 202]. (a) The Congress hereby finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce.

"(b) It is hereby declared to be the policy of this Act [chapter], through the exercise by Congress of its power to regulate commerce among the several States, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power."

Section 6 of the Act provides for minimum hourly wages.

Section 7, the section in question, provides for maximum weekly hours during which an employee may work at the regular rate at which he is employed, and that for all over-time he works he shall be paid at a rate not less than one and one-half times the regular rate, with certain enumerated exceptions.

Section 8, the section which implements the policy, provides: "With a view to carrying out the policy of this Act [chapter] by reaching, as rapidly as is economically feasible without substantially curtailing employment, the objective of a universal minimum wage of 40 cents an hour in each industry engaged in commerce or in the production of goods for commerce, the Administrator shall from time to time convene the industry committee for each such industry, and the industry committee shall from time to time recommend the minimum rate or rates of wages to be paid under section 6 [206]. * * *"

Plaintiff further urges in support of his contention that there was no agreement

between the parties as to the basis on which overtime compensation should be paid, that after the passage of the Act defendants continued to pay, without any increase, the same compensation they had paid before passage of the Act. Because of this, the Administrator argues that the Act must be so construed and applied as to require defendants to increase the pay of their employees over and above the amounts previously agreed upon, because the pay, which was fixed by the agreement to cover both time and overtime, must be now considered as covering only regular time, and that for all overtime worked there must be additional compensation.

I do not believe that such was ever the intent or purpose of the Act. I am of the opinion that defendants and their employees entered into agreements which were intended to and did fix the weekly rates of employment, covering regular time and overtime. To be sure these agreements were made previous to the passage of the Act, but if, before the passage of this Act, defendants and their employees agreed that the weekly salaries for fluctuating hours should cover any overtime which they might work in any given week, I can find nothing in the Act which prohibits the continuance of such contracts after the passage of the Act, provided the minimum wage conditions of the Act are complied with. There is no charge in the present complaint that the minimum wage provisions of the Act are not complied with. Substandard wages or labor conditions or labor policies are not involved, save only that the Administrator in his brief argues that the purported rates of pay shown by defendants' records are fictitious and not the real rates actually paid, but are merely bookkeeping devices to evade the provisions of the law. The theory of the Government is that there is but one method of arriving at the meaning of the phrase "regular rate" as used in the Act, and that is to divide the weekly compensation by the total number of hours the employee actually works during any given week. With this I do not agree, because I believe that in the instant case the "regular rate" at which the various employees were employed was in each instance fixed in the contract of employment.

In the case of Fleming, Adm'r, v. Belo Corporation, supra, involving the same questions as the instant case, Judge Hutcheson, speaking for the Circuit Court of Appeals for the Fifth Circuit, said:

"Appellant does not support this position by pointing to words in the act which purport to prohibit agreements, as here, between employer and employee fixing 'the regular rate at which he is employed,' and agreeing to pay, for overtime, at a rate more than one and one-half times the regular rate fixed by the agreement. Nor does he support it, by pointing to provisions in the act, in any wise limiting the amount of overtime that may be worked and paid for. Of course, he cannot do this since the act contains absolutely none, and in his Interpretative Bulletin No. 4, he has declared: 'It is clear that there is no absolute limitation upon the number of hours that an employee may work. If he is paid time and one-half for overtime, he may work as many hours a week as he and his employer see fit.'

"His only support for his position that the act has this effect, is the claim that the general purpose of the act as expressed in Section 2, shows that it was designed and drawn to penalize and limit overtime. His only attack upon the agreements is, that thereby defendant has been enabled to continue to pay, without increasing it, 'the same compensation he paid before the act. His insistence is that the act must be construed and applied as he contends for, and defendant must be required to pay more than it agreed to pay and its employees agreed to receive, because the pay which by the agreement was fixed to cover both regular and overtime, must, under that construction, be considered as covering only regular time, and for the overtime worked, there must be additional compensation."

The Administrator in the instant case also insists that Congress sought, by Section 7, to limit the hours of labor by making overtime work unprofitable to the employer, and that its purpose was not limited to or intended to affect low wage industries only, but was rather intended to encourage the spreading of employment and the creation of new jobs.

So thoroughly am I in accord with the reasoning in Fleming, Adm'r, v. Belo Corporation, supra, on this question that I quote again from this opinion at quite some length. In meeting this same argument of the Administrator Judge Hutcheson said:

"If then, we are, as appellant contends, to find the meaning of this act, its prohibitions and commands, not in the language, of its implementing clauses, which the Con-

gress has chosen to express that meaning, but in the general purpose, thought to animate it, the title of the act, 'Fair Labor Standards Act', the complete absence from the act of any prohibition against or limitation upon working extra hours, any prohibition against or limitation upon the making of agreements by employers with their employees, the expressions in Section 2, and particularly the provisions of Section 8, would compel us to conclude that the purpose of the act is to establish and gradually raise minimum wages, that the overtime provisions in it are inserted not at all to discourage or limit overtime work but as a part of the scheme to raise substandard wages by providing a definite pay for overtime work when such work is required; and that nothing in it purports to or does at all impair the right of employer and employee to contract as they have done here. When we turn to the legislative history of the act, appellant stands no better. For there is no reference in the whole legislative history to prohibiting agreements between employer and employee, as here, for all inclusive and regular weekly salaries, none whatever to the effect that it was intended that persons already paying more than the minimum wage act provided, should be compelled to pay still more. The legislative history of the act, while showing as the legislative history of all new and controversial acts does some individual differences of opinion, adds up to showing, as to the overtime provisions, only what the act shows, that in broad outline the Congress intended that for overtime work, time and a half, the regular rate of pay at which each was employed, should be paid each employee. How that regular rate should be arrived at, when it was fixed above the minimum, was not, for all that appears in the briefs of the parties, and we have not otherwise had access to the debates or committee reports, dealt with in the debates on the bill, either in the original passage of it, or in amendments offered to it, except to say that wages above the minimum must be left to bargaining between employee and employer. When all is said and done, appellant comes in his argument to this point; that the law should be construed as he contends for, because in the opinion of the administrator, the law would better serve its purpose if it were drawn that way.

\*      \*      \*      \*      \*

"The issue presented here by the claim of the appellant that though the statute does not say so, it must be construed to give full effect to the purpose of placing him as administrator of the act in a tutelary position, the employer and employee in a state of tutelage to him, so that they no longer have a right to fix their wages by agreement, but must fix them according to the legalistic interpretative formulas of the administrator's general counsel, brings this into sharpest focus. It may be admitted that there is a section of opinion in this country and in the Congress, sufficiently collectivistic to prefer the tutelary system for which the administrator contends, and that if they had had sufficient voting power, they would have so provided in the law. It must be conceded however on the other hand that there is another section of opinion both in the nation and in the Congress, which is not so collectivistic and still believes in reasonable freedom of contract. It is just because of this fact, that legislation is compromise, that the views of the proponents and of the opponents, as to the purposes and effect of the legislative act, are never regarded as of value in a construction of it, and that it is settled law that statutes must be construed in accordance with the intent of the legislature as expressed in the language of the act as a whole. Its meaning may not be sought by the courts in the vague penumbrae of the wishes and desires of its proponents or its opponents as these are expressed in debates. Particularly, may it not be sought in the purely legal interpretation by the administrator's legal staff, for if this were so, the administrator would find himself, not only in the powerful position he properly stands in, of administrator for the Congress of one of its laws, as plaintiff bringing suit in the name and power of the United States to enforce the law, but, by issuing a binding interpretation of it before he brings his suit, in the position of a judge in his own cause who has written his decision beforehand.

\*      \*      \*      \*      \*

"Freedom of contract, within constitutionally valid limitations, is, in the United States of America, one of the fundamental freedoms and this particularly so in regard to labor relations. When, then, it is contended as here, that a statute has cut off or limited this freedom, a litigant, must point to something more than his opinion that it ought to be cut off or limited, must point to language clearly and validly so providing. There is no more authoritative principle in the field of labor law than that, subject of course, to valid statutes designed to prohibit substandard conditions and unfair labor

practices, wages, hours, and work conditions are the proper subject of contract between employer and employee and their agreements must be, and are, given full effect in the courts.

\* \* \* \* \*

" Whether Congress could constitutionally fix a minimum wage and then compel employers wishing to provide for fixed weekly salaries to pay a wage higher than the minimum so fixed, might raise a serious constitutional question. That question is not before us, for nothing in the act purports to make this requirement of an employer. Appellant does not so contend. His contention, stripped of all irrelevancies and confusions, really comes down, under the controlling law, to a contention of fact; that the testimony of the employer and his employees that they have agreed, as they testified they did, is false; that there was no agreement; that there was mere bookkeeping to give the appearance of reality to an arrangement fictitious in fact, and a fraud upon the act. But in what the fiction or the fraud consists, except that the agreement is not in accord with appellant's views as to the purpose of the act, is not made to appear. It may be that Congress could validly, and should have, written a provision into the law forbidding contracts such as these made here, but that is a question for Congress, not for the Administrator or the courts."

See also Missel v. Overnight Transportation Company, D.C., 40 F.Supp. 174, decided July 28, 1941.

It is my opinion that defendants and their employees in this case had a legal right to and did make the agreements or contracts they claim to have made. I believe defendants agreed to pay their employees fixed weekly salaries which were sufficient to cover the regular time and any weekly overtime they might be called upon to work. That the number of hours actually worked by the employees each week fluctuated, but that under the agreements their salaries were guaranteed to remain the same. I find there was no violation of Section 7, and it therefore follows there was no violation of Section 15, threatened violation of which this court is asked to enjoin and restrain. The prayer of the complaint for injunction is therefore denied.

In view of my holding, it is unnecessary for me to pass upon the questions of bonus, and whether or not certain employees come within the definition of executives.