176 P.2d 670

WATSON et al. v. HIGHTOWER et al.

No. 4989.

Supreme Court of New Mexico.

Jan. 13, 1947.

George L. Reese, Jr., of Carlsbad, for appellants.

James W. Stagner and Caswell S. Neal, both of Carlsbad, for appellees.

BRICE, Justice.

This action was brought as authorized by Title 29, U.S.C.A. § 206 et seq., known as the "Fair Labor Standards Act." From a judgment for the defendants the plaintiffs have prosecuted this appeal.

The appellants and appellees for purposes of convenience will be hereinafter called plaintiffs and defendants respectively.

Plaintiffs joined in a complaint filed July 5, 1945, in the district court of Eddy County, containing separate claims for each plaintiff, for the recovery of various amounts alleged to be due them for overtime work performed for the defendant Earl V. Hightower, plus equal amounts as liquidated damages and for attorneys' fees under the provisions of the Fair Labor Standards Act, Title 29 U.S.C.A. § 206 et seq.

Plaintiff E. A. Watson alleged that he was employed as an oil well driller at an agreed wage of $20 per twelve hour day, and the other plaintiffs alleged that they were employed as tool dressers at an agreed wage of $18 per twelve hour day, by the defendant Hightower who was a drilling contractor in Eddy County, New Mexico, and that they worked upon a certain drilling machine and tools belonging to Hightower and employed by him, during the course of plaintiffs' employment in the drilling of three oil wells upon two leases in Eddy County belonging to the defendant George Turner.

Each plaintiff alleged the filing of a claim or claims of lien under the laws of New Mexico and sought to foreclose the same upon the drilling machine, tools and oil leases and wells, and claimed attorneys' fees for such foreclosure.

Defendant Hightower answered alleging that the compensation paid plaintiffs of $20 per twelve hour day for driller and $18 per day for tool dresser included overtime for each hour worked per week in excess of forty and that such rates were

rates designed by the agreement of the parties to include overtime at the rate of one and one-half times the regular rate paid in the Artesia oil fields for like work with double time for the seventh day, and that such rates were designed to guarantee to the employees that such overtime would be paid regardless of the number of hours actually worked by such employees. The answer denied that said defendant was indebted to either of the plaintiffs in any sum for overtime, penalty or attorney's fees under the Fair Labor Standards Act.

Defendant Turner answered, likewise denying that any sum was owing to the plaintiffs for overtime, penalty or attorney's fees under the Fair Labor Standards Act, and stating that for such reason the lien claims should fail.

Both answers admitted that the Fair Labor Standards Act applied to the employment and both denied that the plaintiffs had worked the number of overtime hours specified in the complaint.

The defendants each filed separate cross complaints, alleging that nothing was due the plaintiffs and praying that claims of lien filed by the several plaintiffs be cancelled.

That part of the Fair Labor Standards Act involved here is the following:

"§ 207. (a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—* * *

"(3) for a workweek longer than forty hours * * * unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. * * *"

"Sec. 216 * * *

"(b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

The parties agree that under the Fair Labor Standards Act the minimum wage

permitted thereby is 40¢ per hour. (Exceeded here)

The following are the findings of fact made by the trial court, except those we deem unnecessary to a decision:

(1) "Plaintiff, E. A. Watson, during all times material hereto, was an oil-well driller, and plaintiffs, L. J. Watson, James L. Condon and George Corle, were, during said times, tool dressers. All of said parties were employed by the defendant, Earl V. Hightower, to work upon his drilling machine and tools in the drilling of oil and gas wells in Eddy County, New Mexico, upon certain oil and gas leases described in the pleadings owned by the defendant, George Turner, and the dates of the respective employments of the respective plaintiffs, the particular oil and gas lease upon which they worked and the various times during which their respective employments lasted, are all set out further and admitted by the pleadings in this action. * * *

(2) "Defendant Hightower conceived the idea of establishing a 12-hour day or tower, taking the average pay of $1.25 per hour in the Artesia field for drillers for 40 hours per week, 32 hours at 1½ times that rate, and then figuring double time for 12 hours, which would make $140.00 due the driller for 12 hours per day, seven days a week. * * * The same plan was used for tool dressers except he started figuring their time at $1.12½ per hour, making their total wages for 12 hours per day, 7 days per week, $18.00 per day, or $126.00 per week, and to pay for 12 hours for every day they went to the well for work, even though they worked less time.

(3) "That at the time of the employment of the respective plaintiffs, the defendant Hightower did not guarantee to them or any of them that they would be employed for any definite or certain number of days per week, or for any particular period of time; that there were a number of days during their period of employment in which they only worked a short time in a particular day, but for each such day the plaintiffs set down a full 12-hour day in the time book, and at the time of the trial they were unable to testify as to such number of days but stated there were not many.

(3½) "That during the entire course of employment of the respective plaintiffs they worked various numbers of days per week, and regardless of the numbers of days worked per week said plaintiffs were paid the sums of $18.00 and $20.00 per day respectively, and in making the computation for the hours worked as shown in later findings the various plaintiffs are given credit for a full twelve hour day for each day shown by the log or time books, regardless of the number of hours actually worked in a day.

(4) "The plaintiffs E. A. Watson and George Corle, were employed by Earl V. Hightower personally under substantially the following terms:

"That they would be paid $20.00 and $18.00 per day for a 12-hour day, with no deductions and no overtime unless they worked more than 12 hours, in which event for from one to five hours they would be paid an additional half day, and for more than five hours they would get a full day; with no deductions to be made from their checks, and that they would be paid for 12 hours or a full day for doing anything less than a full day at the rig.

(5) "The plaintiffs L. J. Watson and James L. Condon were employed as tool dressers on behalf of the defendant by driller E. A. Watson at the rate of $18.00 per day for tool dressers, with straight time for each day they went out and with no deductions, and two or three days later the defendant Earl V. Hightower talked with L. J. Watson regarding his rate of pay and told him that he would get $18.00 a day every time he signed the log book (a record of operations kept at the well) and nothing more for overtime or double time. No talk was had between Hightower and Condon about the rate of pay.

(6) "The plaintiffs were paid at regular intervals in accordance with the agreements above set out and everything went well until Federal tax collectors descended on the defendant Earl V. Hightower, examined his books and required the payment of social security and income taxes on the plaintiffs as employees. Hightower then made deductions from the next pay checks of the plaintiffs still in his employ who then resigned and brought this action after Hightower refused to himself bear the taxes he had remitted.

(7) "The plaintiffs were each actually employees of the defendant Hightower and not labor contractors, but during the entire course of their respective employments' until the final checks, they each received pay from the defendant Hightower on the basis of the agreed wages for the time actually worked by each without any deductions for withholding tax or social security contributions. * * *"

The plaintiff Corle quit work, and received his last pay check without any deductions for Federal Social Security and income taxes. The defendant Hightower deducted from the wages earned by each of the other plaintiffs during their last pay period, the total amount of withholding taxes and Social Security contributions which had accrued against such plaintiff during the entire time of employment, and tendered those plaintiffs the difference between those amounts and the balance due them according to the terms of employment. With these deductions the plaintiff E. A. Watson was given a check

for $38.15, and L. J. Watson a check for $210.44. The amount due to plaintiff Condon was less by $1 than the sum of the deductions made for withholding taxes and Social Security contributions, and he was tendered nothing. The plaintiffs did not cash these checks.

The plaintiffs worked upon oil and gas wells being drilled by the defendant Hightower for defendant Turner upon lands owned by Turner. During this employment plaintiff E. A. Watson worked 304 hours in excess of 40 hours a week, and filed a claim of lien for $340.10 in the office of the County Clerk of Eddy County, against defendant Turner's land and against the machinery and tools of defendant Hightower, used in such work. The plaintiff E. A. Watson worked a total of 301 hours in excess of 40 hours per week and filed a like lien to secure $539.31 representing overtime, and another to secure $38.15 for regular time. The plaintiff L. J. Watson worked 178 hours in excess of 40 hours per week and filed a like lien to secure $478.94 representing a claim for overtime, and another lien to secure $210.-44 for regular time. The plaintiff James L. Condon worked 153 hours in excess of 40 hours per week, and filed a like lien to secure the sum of $231 representing his claim for overtime. The plaintiff James L. Condon worked 264 hours in excess of 40 hours per week upon a second well and

filed a like lien to secure the sum of $397.-50 representing his claim for overtime. The plaintiff George Corle worked a total of 204 hours in excess of 40 hours per week and filed a lien to secure $307.50, representing his claim for overtime for work on one well. The plaintiff Corle also worked a total of 110 hours in excess of 40 hours per week on a second well and filed a lien to secure $176.50 representing his second claim for overtime.

"19. That the defendant Hightower has delivered checks to each of the plaintiffs for the amounts due them less lawful deductions for income taxes and social security, but the plaintiffs have not cashed them on account of notations thereon 'payment in full' with a statement of the deductions made, * * *

"20. That the plaintiffs understood that their daily wage included overtime pay and worked with such knowledge and accepted their pay checks without complaint until their withholding tax was deducted by their employer, and if such deduction had not been made their present claims would not have been asserted. Plaintiffs were at all times familiar with the terms of the Fair Labor Standards Act."

The defendant Turner had no contract of employment with any of the plaintiffs, and was not indebted to either of them in any amount.

It is agreed by the parties and found by the trial court that a reasonable attorney's fee, if allowed to plaintiffs, is $1000, and that a lien should be placed on each of the leases for $500 should attorney's fees be allowed plaintiffs.

The court made the following conclusions of law:

"1. That the defendant Hightower, having taken the fair average rate of pay in the Artesia field, made allowance for overtime, and computed such rates in his daily wage; has in fact complied with the Fair Labor Act and its purposes, to-wit, to raise the standard of living and pay the penalty for failure to spread employment, and the plaintiffs should not be permitted to use the Act to exact an exhorbitant wage.

"2. That the causes of action of the plaintiffs should be dismissed and the claim of liens released.

"3. That the plaintiffs L. J. Watson and E. A. Watson are entitled to judgment against Hightower for the amounts found due them in Finding of Fact No. 19, but as they have been given checks in regular course prior to the filing of such and failed to cash them they are not entitled to costs, attorney's fees or a lien on account thereof."

"4. That portion of the contracts of employment whereby the defendant Hightower agreed that he would not make deductions for income taxes and social security payments was void as against public policy."

The terms of the contracts between plaintiffs and defendant Hightower are difficult to determine because the agreements depend upon vague oral statements, deductions from acts of the parties and testimony regarding the value of like services in the Artesia oil field.

The findings of the trial court regarding the terms of the contracts in question are by no means clear. See findings 3½, 4, 5, 19 and 20 supra. The plaintiffs construe these findings as follows:

"The findings of fact made by the court construed most strongly against the plaintiffs are to the effect that they, with the exception of plaintiff James L. Condon, went to work for and worked for Hightower under agreements providing for certain daily wages amounting to more than the minimum wages required by the Act, for 12 hours work; a contemplated work week of seven days except when shut down for cement to set; and an understanding or agreement that the daily wages would include compensation for all overtime, except such as might accrue from working more than 12 hours in any one day when an extra half day's pay would be paid for work over 12 and up to 17 hours and an extra day's pay if the work in any day exceeded 17 hours; and with a further un-

derstanding or agreement that the plaintiffs would receive a full day's pay each time they reported to the rig and began work even though they did not, due to conditions beyond their control, work a full 12 hours. There was no guarantee of any minimum number of days work per week nor any guaranteed weekly salary."

As we understand, this construction of those particular findings accords with that of the defendants.

If all contracts of employment fixed an hourly rate for normal non-overtime work, and at one and one-half that rate for overtime, there would be little or no difficulty in construing them. But, as will be seen from the cases annotated in 89 L.Ed. at pages 35–60, entitled "Determination of Overtime Compensation under Federal Fair Labor Standards Act," contracts of employment are not ordinarily so simple. Many of the cases involve contracts in which employers have attempted to evade the burden of the statute; and others, contracts made in good faith but so complex that much difficulty has been experienced in construing them. While the findings mentioned are not clear statements of ultimate facts, yet aided for clarification only (see Mosley v. Magnolia Petroleum Corp. 45 N.M. 230, 114 P.2d 740) by the trial court's memorandum opinion, filed below, we are of the opinion that the plaintiff's construction accords

with that of the trial court, and we will so accept it.

The plaintiffs do not agree that the findings just mentioned are supported by substantial evidence, and whether they are so supported is the first question to be determined.

The evidence amply supports the contention of the defendants that the average pay per hour for well drillers in the Artesia field is $1.25 for a 40 hour week, one and one-half times that rate for overtime and double that rate for the 7th day. Drillers working 12 hours a day for 7 days would thus receive $140 for a 7 day week. The average pay for tool dressers in the Artesia field is $1.125 per hour for a 40 hour week, one and one-half times that rate for overtime and double that rate for the 7th day. Tool dressers working a 7 day week would thus receive $126. It was on this basis that the defendant Hightower fixed the rate of $20 a day of 12 hours for well drillers and $18 a day for a 12 hour day for tool dressers. It thus appears that the plaintiffs were paid the average wages paid by others for like work in the vicinity where they were employed, and that defendant Hightower *intended* that the wages paid should include overtime and double time wages.

To make the contract more attractive to the plaintiffs, the defendant Hightower agreed to pay them for a full 12 hour day

for any day they appeared for work at the place of employment, except when no drilling or tool dressing was possible or necessary. Only a few days were lost from work during the time plaintiffs were employed by Hightower.

Each of the plaintiffs knew the provision of the Fair Labor Standards Act regarding his right to overtime wages for time employed in excess of forty hours per week; and each of them accepted his $20 or $18 per day for 12 hours work, with no intention of claiming more for overtime. There is substantial evidence that supports the foregoing evidentiary facts, the greater part of which it is unnecessary to review.

The defendant Hightower testified that he told E. A. Watson and George Corle that he worked a 12 hour day, and made his pay roll for $18 and $20 per day, "but there was no double time or overtime, no car allowance," and he did not deduct withholding taxes; that they would be paid for a full day of 12 hours if they went out to the rig and set their lunch pails down. He did not explain to them how he arrived at the wages of $18 and $20 a day, but stated to them "I am paying equal to anybody in the field." "Q. Did you explain to them that the wage you paid included overtime and double time? A. There was nothing to be added on top of it, *that included everything.*" He discussed the matter with L. J. Watson after he went to work. He asked him if he knew what he was to receive and Watson said he did, and defendant then said "Well, you understand you get $18 a day every time you sign the log book, and there is *nothing more for overtime or double time?*" "Q. Did he tell you at that time that he understood it? A. Well, evidently he did, he went to work after that. He never raised any objection." He testified that none of these men made objections until he told them that the collector of internal revenue had demanded that he withhold income and social security taxes.

"Q. And you explained to them you had averaged up these wages? A. No, Sir, I did not explain to them how I arrived at the $18 and $20. I said I figured my wages to where they averaged the average of others in the field *and it took into consideration time and a half and double time and by that way they could not lose.* By guaranteeing every day they would not lose any time, and time and a half and double time, because at that time lots of men were quitting their jobs because they said their employers were laying them off on double time days.

"Q. You just explained, did you not, you had figured out your wages to where you could pay $18 and $20 a day straight time? A. Yes, Sir, and that was equal to the pay they would receive in the field.

I talked to Mr. Condon and said 'Do you understand what your salary is?' and he said 'Mr. Cribbs said I was to get $18 a day and you would not withhold anything and I will get that for 12 hours and every day I work.'

"Q. Did you have any other understanding with them with regard to working parts of a half-day? A. Yes, sir; every day they put in one hour or two or three up to five hours over their twelve hours I was to pay them one day and one-half, and if they put in more than five hours above their twelve hours, like if they would put in 17½ hours they would get a double day. If they worked 17 hours they would get one and one-half day.

"Q. The rates you mention, eighteen and twenty dollars, do they represent the average rates paid in the Artesia field for drillers and tool dressers?"

The plaintiff Condon testified in regard to his contract with defendant Hightower, as follows:

"I was hired by J. M. Cribbs, a driller acting for Hightower, in the presence of my wife.

"Q. State in the exact language so far as you can, all statements made by Hightower and all statements made by you in the conversation or conversations above referred to relative to your employment and the terms thereof? A. J. M. Cribbs offered me a job as tool dresser on a Wichita Falls Spudder belonging to Earl V. Hightower. He stated that I would receive $18 a day for 12 hours with no deductions held out of pay and pay periods to be 5th and 20th inclusive."

The principal difficulty is to determine the "regular rate at which he (the employee) is employed," as this phrase is used in Sec. 207, supra, of the Fair Labor Standards Act. When this is determined, then time and a half or double time, is a mere matter of calculation. The trial court did not find the "regular rate" of employment, but if this can be determined from the findings made that are supported by substantial evidence, the case should not be returned for a calculation that we can make from the facts found.

The number of overtime hours worked by each plaintiff is not questioned.

The phrase "The regular rate at which he (the employee) is employed," as used in the Federal Fair Labor Standards Act, means the hourly rate actually paid for the normal non-overtime work week of 40 hours. Walling, Adm'r, v. Helmerich & Payne, 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29.

The plaintiffs, after citing authorities, state:

"It seems clear from said authorities that the proper manner to determine the

regular hourly rate of each of the plaintiffs is to take the wages actually received for their first 40 hours of employment and divide by 40. Or since they were paid the same wages each day, take their weekly earnings and divide by the number of hours worked during the week. In either event the result is the same. $20 divided by 12 equals $1.66 per hour. This was the amount paid to E. A. Watson for his 40 hour regular work week. $18 divided by 12 equals $1.50 per hour and this was the amount paid to the other plaintiffs for their 40 hour regular work weeks."

The defendants state their contention as follows:

"We contend here that the basic rate, or the regular rate upon which overtime compensation is to be and was calculated, is the sum of $1.25 per hour for drillers and $1.125 for tool dressers, and that this fact is unchanged through the addition of calculated overtime and double time to such rate for the first forty hours of the week as a guarantee to employees that they will receive the overtime contemplated by the Act. * * *"

■ This evidence substantially supports the findings of the trial court to the effect that the contract under which the plaintiffs E. A. Watson, L. J. Watson and George Corle were employed, provided for a payment of $20 a day for E. A. Watson and $18 a day each for L. J. Watson and George Corle, and that there was included in these wages the regular wages for 40 hours per week, time and a half for overtime work during six days, and double time for the work done on the 7th day. These plaintiffs could not have been mistaken concerning this contract. The average pay in that community for drillers employed in the same kind of work was $1.25 per hour "regular rate" for a 40 hour week, time and a half for all over time for six days, and double time for the 7th day, and the plaintiffs were well informed regarding the standard of wages paid to laborers of their profession in the community where they worked. They were told in substance that overtime was included in these wages. They understood their right to overtime wages under the Fair Labor Standards Act, and how to figure it. They never claimed overtime for a 12 hour day, other than that included in the wages paid them; and they did not intend to claim it, until they fell out with the defendant Hightower for holding out of their wages sufficient money to pay their withholding income tax and social security tax. The contract provided for all overtime wages not included in the $20 and $18 pay for a 12 hour work day. We are satisfied that the plaintiffs mentioned, with this information and agreement, well understood the terms of the contract to be as found by the trial court.

Does the contract which the trial court found was made between the defendant Hightower and the plaintiffs contravene the Fair Labor Standards Act? is the next question posed.

■ We are of the opinion that the contract does not contravene the Fair Labor Standards Act, and this conclusion is well supported by decisions of the Federal Courts.

A similar, though not the exact question, was decided by the United States Supreme Court in Walling, Adm'r, v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 427, 65 S.Ct. 1242, 1245, 89 L.Ed. 1705. In that case the contract provided for $35 per week regular rate, but the facts were such that the Court concluded that this rate was an artificial one and did not comply with the Fair Labor Standards Act. The Court stated in regard to such contracts:

"As long as the minimum hourly rates established by Section 6 (Sec. 206 U.S. C.A.) are respected, the employer and employee are free to establish this regular rate at any point and in any manner they see fit. They may agree to pay compensation according to any time or work measurement they desire. United States v. Rosenwasser, supra. 'But this freedom of contract does not include the right to compute the regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes.' Walling v. Helmerich & Payne, Inc., supra. The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the work week, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact. Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts."

It seems to us that any other conclusion than that arrived at by the trial court in this case would be unrealistic and deny the employer and employee the right to freely establish the "regular rate at any point and in any manner they see fit," provided such rate does not negate the statutory purpose, and the contract involved does not.

In Walling, Adm'r, v. Harnischfeger Corp., 325 U.S. 427, 65 S.Ct. 1246, 1248, 89 L.Ed. 1711, in passing upon this question the Supreme Court stated:

"Our attention here is focused upon a determination of the regular rate of compensation at which the incentive workers are employed. To discover that rate, as in the Youngerman-Reynolds Hardwood Co. case, we look not to contract nomenclature but to the actual payments, exclusive

of those paid for overtime, which the parties have agreed shall be paid during each workweek. * * *

"(1) Those who receive hourly rates at least 20% higher than their guaranteed base rates clearly are paid a regular rate identical with the higher rate and the failure of respondent to pay them for overtime labor on the basis of such a rate is a plain violation of the terms and spirit of Section 7(a). No contract designation of the base rate as the 'regular rate' can negative the fact that these employees do in fact regularly receive the higher rate. To compute overtime compensation from the lower and unreceived rate is not only unrealistic but is destructive of the legislative intent. A full 50% increase in labor costs and a full 50% wage premium, which were meant to flow from the operation of Section 7(a), are impossible of achievement under such a computation."

We do not find that there is any violation of the terms or spirit of the statute in the contract involved in this case. The actual payments made as "regular rates" to the three employees named, *exclusive of those paid for overtime,* are $1.25 per hour for drillers and $1.125 per hour for tool dressers, just a matter of mathematical computation.

In Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 127, 87 L. Ed. 83, it was held that the contract in question in that case violated the terms of the Fair Labor Standards Act, but it was stated:

"One final contention merits but slight consideration. Respondents were employed on the basis of an eight hour day and regularly worked seven days a week, receiving fixed wages ranging from $6.50 to $11 per day. There was no agreement providing for an hourly rate of pay or that the weekly salary included additional compensation for overtime hours. Petitioner urges that it complied with the overtime compensation requirements of the Act because respondents received wages in excess of the statutory minimum wage, including time and one-half of that minimum wage for all overtime hours, which wages respondents impliedly agreed included overtime compensation by accepting them. A similar argument was squarely rejected in Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682."

In the present case the defendant Hightower and the three plaintiffs named agreed that the daily wages paid included "additional compensation for overtime hours."

In Fleming, Adm'r, v. Stone, D.C., 41 F.Supp. 1000, that court had before it a similar question. It was found in that case, as in this, that under the agreements the employer and employees intended that the fixed weekly rates of compensation should

cover time and overtime, and the Court concluded that there was no violation of the Act. The contract fixed the weekly wages, ranging upward from $30 a week, *irrespective of the hours worked.* The hours fluctuated weekly, generally above but frequently below the hours specified in the Act. The employees received extra compensation for Sunday only, and for extra work outside the scope of their usual employment. The Circuit Court of Appeals in the same case (Walling, Adm'r, v. Stone, 7 Cir., 131 F.2d 461, 462) stated:

"The question presented is whether payment of a fixed salary regardless of the number of hours worked in a week satisfies the overtime requirements of § 7 of the Act by reason of the fact that the salary equals or exceeds the statutory minimum for regular time, plus time and one-half the minimum for overtime, for the hours actually worked. * * *

"In the Missel case the court held that the 'regular rate' of pay of an employee working under a fixed salary contract is the total compensation received by him for the week's work, divided by the total number of hours worked in that week. In that case, as in the instant case the contract of employment provided for the payment of a fixed salary regardless of the hours worked. There, as here, during the weeks in question the fixed salary was greater than an amount calculated at the statutory minimum hourly rate (with time and one-half for overtime) for the hours actually worked. Missel brought a statutory action to recover alleged unpaid overtime compensation. The Supreme Court held that the contract did not comply with the requirements of § 7 of the Act and pointed out that two elements are essential in a contract of employment in order to comply with the Act: (1) Either a stated hourly rate for regular work, or an upper limit on the total number of hours to be worked for a fixed salary, and (2) an express provision that overtime should be paid for at time and one-half the regular rate. If the first element is absent from a contract, the hours worked might require minimum compensation greater than the fixed wage; if the second is absent, overtime work could be paid for at any rate equal to or greater than the regular rate. Thus, neither of these elements alone is sufficient for compliance with the law—both must be present. In the case at bar both are absent."

In this case both of these elements are present. There is an *upper limit* of 12 hours to be worked for the fixed salary of $20 and $18 per day. Because of the upper limit on the total number of hours to be worked for $18 and $20 per day, the employee cannot be deprived of his statutory compensation for overtime work. Also, there was an express provision that

overtime should be paid for at time and one-half of the regular rate and double the regular rate for Sunday work. We are of the opinion that the contract in question in no way contravenes the statute.

We have a different situation regarding the plaintiff Condon. After Condon was employed the defendant Hightower asked him if he understood what his salary was, and Condon replied, "Mr. Cribbs said I was to get $18 a day and you would not withhold anything and I will get that for 12 hours and every day I work." Condon testified: "J. M. Cribbs offered me a job as tool dresser on a Wichita Falls Spudder belonging to Earl V. Hightower. He stated that I would receive $18 a day for 12 hours with no deductions held out of pay, and pay periods to be 5th and 20th." This is all the testimony regarding the contract with this plaintiff, except the fact that he knew the rate of pay in the Artesia field and he was not paid for overtime, and he did not claim it.

We are of the opinion, however, that in the absence of proof that the agreement specifically provided that the daily wages included overtime up to 12 hours as an upper limit and an express provision that overtime was included in the wages of the plaintiff Condon, the wages received must be reckoned as having been paid for the 12 hour day and that the "regular rate" would be 1/12 of $18 or $1.50 an hour.

This is the holding as we understand it, in Walling, Adm'r, v. Stone, supra, and Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 1221, 86 L.Ed. 1682.

It would seem that it is only the indefiniteness of the contract that entitles plaintiff Condon to pay for overtime, which neither of the parties thought he was entitled to receive. But we are not authorized to amend the express terms of their contract.

"Petitioner invokes the presumption that contracting parties contemplate compliance with law and contends that accordingly there is no warrant for construing the contract as paying the employee only his base pay or 'regular rate,' regardless of hours worked. It is true that the wage paid was sufficiently large to cover both base pay and fifty per cent additional for the hours actually worked over the statutory maximum without violating section six. But there was no contractual limit upon the hours which petitioner could have required respondent to work for the agreed wage, had he seen fit to do so, and no provision for additional pay in the event the hours worked required minimum compensation greater than the fixed wage. Implication cannot mend a contract so deficient in complying with the law." Overnight Motor Transportation Co., Inc. v.

Missel, 316 U.S. 572, 62 S.Ct. 1216, 1221, 86 L.Ed. 1682.

Also see Yellow Truck & Coach Mfg. Co. v. Edmondson, 6 Cir., 155 F.2d 367, and Warren-Bradshaw Drilling Co. v. Hall, supra.

We are of the opinion that the plaintiff Condon should be allowed attorney's fees in the sum of $350 for his representation in this court.

The plaintiffs have assigned and argued numerous alleged errors, a number of which we believe have merit, but a consideration of them, whether sustained or not, would not affect the result. The facts found by the trial court support the judgment as to the plaintiffs E. A. Watson, L. J. Watson and George Corle; but as to the plaintiff Condon the judgment lacks such support.

The judgment of the district court is affirmed as to the plaintiffs E. A. Watson, L. J. Watson and George Corle, and reversed as to the plaintiff Condon. The cause is remanded with instructions to the district court to set aside its judgment as to the plaintiff Condon and proceed with a determination of his cause and enter judgment for him not inconsistent herewith.

Plaintiff James L. Condon shall recover his costs, otherwise costs are adjudged against the other plaintiffs (appellants).

It is so ordered.

BICKLEY, C. J., and LUJAN and SADLER, JJ., concur.

McGHEE, J., did not participate.